STATE *ex rel.* MAJOR *v.* CUMMINGS, MAYOR.*

(*Nashville,* December Term, 1941.)

Opinion filed February 14, 1942.

*This case is reprinted and annotated in 139 A. L. R., 837.

B. H. HAGEY, of Nashville, for complainant.

W. C. CHERRY, of Nashville, for defendant.

MR. SPECIAL JUSTICE ALAN M. PREWITT delivered the opinion of the Court.

The mayor of the City of Nashville refused to grant a certificate of good moral character to the complainant, not based on his moral turpitude, but because the granting of the certificate would have been to license him to sell liquor in an area prohibited in a segregation ordinance. The complainant charges that the mayor acted arbitrarily in refusing to issue the certificate. Ordinance No. 1220 of the city confined the sale of liquor to an area comprising the uptown business district of the city. Later on, amendments were made to this ordinance enlarging the area.

The instant case is controlled by *State ex rel. Saperstein* v. *Bass, Mayor,* 177 Tenn., 609, 152 S. W. (2d), 236, 239. In that case, Mr. Justice DEHAVEN, speaking for this Court, said:

"In the exercise of the power conferred by the legislature 'to license, tax, and regulate . . . retailers of liquor,' the Board of Commissioners enacted ordinance No. 2307 and amendments thereto. By the first amendment, the area of the City of Chattanooga in which a retail liquor store could be licensed was specified, and a penalty was fixed for a violation of the ordinance. The

second amendment did nothing more than further restrict the area in which liquor can be sold.

"The power to exercise a sound discretion is implicit in the power to regulate. The Board of Commissioners of the City of Chattanooga elected to exercise the power to regulate retailers of liquor by segregating such business to a described area of the city. Those persons whose property was left outside the area in which liquor stores could be licensed have no basis for constitutional complaint that their property was not included within such area. As said by Justice FIELD in *Crowley* v. *Christensen*, 137 U. S., 86, 11 S. Ct., 13, 15, 34 L. Ed., 620: 'There is no inherent right in a citizen to thus sell intoxicating liquors by retail. It is not a privilege of a citizen of the state or of a citizen of the United States. As it is a business attended with danger to the community, it may, as already said, be entirely prohibited, or be permitted under such conditions as will limit to the utmost its evils. The manner and extent of regulation rest in the discretion of the governing authority.'

"The chief complaint of petitioner seems to be that having erected a store room and having been granted a license for the conducting of a retail liquor business thereon, for the year 1940, the change of the boundaries of the area in which liquor could be sold so as to exclude his property amounted to a discrimination against him and a personal wrong. Why the Board of Commissioners made this change does not appear. The judiciary cannot inquire into motives prompting the enactment of a statute, or ordinance. *Madison* v. *City of Maryville, supra* [173 Tenn., 489, 121 S. W. (2d), 540.]

"One who assails a classification made in a police measure must carry the burden of showing that

such classification is essentially arbitrary. *McConnell* v. *City of Knoxville*, 172 Tenn., 190, 110 S. W. (2d), 478, 113 A. L. R., 966. The basis on which petitioner asserts the ordinance here involved is discriminating and arbitrary is that the three other corners at the street intersection are occupied by commercial establishments, as are several lots adjacent to these corners, and that this locality is in a commercial zone as established by a zoning ordinance passed a number of years ago. We think this immaterial. The Board of Commissioners may have well determined, in the exercise of its sound discretion, that it would be inimical to the public safety and morals to permit retail liquor stores in this locality. We are unable to say that ordinance No. 2307, as amended, is unreasonable or arbitrary, or violates any provision of the constitution of this State, or of the Constitution of the United States.''

The City of Nashville under its charter, which is Chapter 125, Private Acts of 1923, in subsection (13) under Section 12, provides that the city shall have power: ''To regulate or prohibit and suppress theatrical or other exhibitions, moving picture shows, amusements, gambling houses, disorderly houses, bawdy houses, obscene pictures and literature, junk dealers, pawnshops, the sale, manufacture or transportation of intoxicating liquors, and to confiscate and destroy gambling equipment, stills, and intoxicating liquors.''

By subsection (40) it is likewise provided that the city has power ''to pass all ordinances necessary for the health, convenience, safety and general welfare of the inhabitants of the city.''

The fact that a license has been granted by the State does not preclude the municipal authorities from

making reasonable regulations pertaining to the sale of liquor. See *Smith* v. *Knoxville,* 40 Tenn. (3 Head), 245.

▮ A license does not protect the holder from such police regulations affecting the trade as are not unreasonable or oppressive. *Maxwell* v. *Jonesboro Corp.,* 58 Tenn. (11 Heisk.), 257.

▮ The right of the State to regulate liquor traffic does not flow from the prohibition amendment, but flows from its police power which was all-powerful to deal with the subject of police power regulation unless it distinctly contravened the Eighteenth Amendment, and the same thing applies to the state law and specifically to Chapter 49 of the Public Acts of 1939.

▮ ▮ The spot ordinances are not invalid because it may have been that the council found after the passage of the first ordinance that its provisions encouraged the sale of bootleg whiskey, because there was no delivery permitted under Chapter 49, and it may have found that this use of bootleg liquor was a revenue lost to the city as well as threatening the health and welfare of the city generally. However this may be, the Court will not inquire into that subject. The proposed place of the business location asked for by complainant was offside both the original ordinance No. 1220 and any spot ordinance, so that if any spot ordinance affecting this situation was invalid, this would result in Ordinance No. 1220 being left as the segregation ordinance and complainant would derive no rights from the unconstitutionality of the amended ordinance.

It results that we find no error in the decree of the chancellor, and it is affirmed with costs.