WISE *v.* McCANLESS, COMMISSIONER.

(*Nashville,* December Term, 1944.)

Opinion filed November 5, 1945.

WALKER & HOOKER and TYREE HARRIS, III, all of Nashville, for appellant complainant below.

ROY H. BEELER, Atty. Gen., and C. W. TULEY, Asst. Atty. Gen., for appellee.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

Complainant brought this bill to enjoin the enforcement of a regulation promulgated by the commissioner of finance and taxation on September 4th, 1945, charging that this regulation is violative of his constitutional rights, oppressive and unreasonable and beyond the authority conferred on the Commissioner by the legislature. The chancellor sustained a demurrer and denied relief, impelled against his judgment by his construction of language in our opinion in the case of *McCanless, Commissioner* v. *Klein*, 182 Tenn. 631, 639, 640, 188 S. W. (2d) 745, 748, which we have hereinafter distinguished. Complainant appealed and assigns errors, couched in varying language, which, in substance, challenge the refusal of the chancellor to grant the relief prayed for on the grounds above summarized.

The regulation the validity of which is challenged reads:

"No retail liquor store may be operated within one hundred feet of any building, room, or other place to

which the public are admitted and in which alcoholic beverages, as defined by Chapter 49 of the Public Acts of 1939, are consumed by members of the public; provided, however, that the consumption of alcoholic beverages by guests in hotels shall not be considered as being within the intendment and purview of this rule and regulation.''

Complainant operates a liquor store under a license for the current year (1945) duly issued to him by the commissioner before this regulation was promulgated. His store is located at the corner of Second Avenue, North, and the Public Square, in Nashville.

It is charged that there is located immediately adjacent to complainant's place of business, ''what is known as the 'Hollywood Palms', at city No. 203 Public Square; that said establishment has an entrance onto the Public Square through which the public enters, and then after paying the price of admission are permitted to enter a large room by descending a stairway located below the level of the street; that in said room an orchestra is provided for dancing and floor shows and other entertainment during the hours that said establishment is open; and that the public is permitted to consume liquor on said premises, but no liquor is sold by the operators of said premises either by the drink or in bottles or packages, but ice, soft drinks and mixtures are provided or sold for the convenience of those desiring to consume alcoholic beverages. Said establishment known as the Hollywood Palms serves food of all kind and engages primarily in the entertainment, night club or restaurant business.''

It is further charged that complainant has no interest in, or control over, this place; that he sells no liquor to the proprietor of said Hollywood Palms and delivers no liquor at or to this establishment; that he has sought without success to buy out this operation, or to purchase

the lease of the premises, in order to close and suspend the same and thus avoid conflict with the regulation aforesaid; that he is in no way responsible for said existing conditions, and the enforcement of this regulation against him under these circumstances will work an irreparable injury to him and render it impossible for him to prosecute the business he has been authorized and licensed to follow and in which he has invested his capital and efforts. The truth of these charges of the bill is not denied.

Broad powers of regulation have been conferred by the legislature upon the commissioner of finance and taxation by Chapter 49, Public Acts of 1939, and Chapter 113, Public Acts of 1941, and in *McCanless, Commissioner, v. Klein, supra,* and elsewhere we have recognized and enforced these powers. However, neither the decisions of this Court nor any expressions therein are to be construed as holding that the legislature has delegated to the commissioner authority to promulgate and enforce regulations which are unreasonable oppressive or discriminatory and the enforcement of which would destroy the possibility of the exercise of the privilege conferred by the legislature upon the conditions prescribed by statute. This would be to defeat the manifest purpose and policy of the legislature as declared by Chapter 49 of the Public Acts of 1939.

The language quoted by the learned chancellor from the opinion in the recent case of *McCanless, Commissioner, v. Klein* was used in commenting on the *power of the State* over the liquor traffic, either to restrict and regulate, or to prohibit altogether its sale, in response to the holding of the circuit judge in that case to the effect that the regulation there under consideration was "not within the police powers of the State." But it was not intended to hold that, when the State authorizes its

sale under prescribed general conditions and empowers the commissioner to regulate such sales, the commissioner may so unreasonably regulate as to prevent altogether the making of such sales.

■ The right of a duly licensed dealer to protest an unreasonable, oppressive or discriminatory regulation does not rest on a fundamental property right, but on a privilege we have termed a "permit" (see quotations in *McCanless* v. *Klein* from our other decisions) expressly conferred by the State, acting through the legislature. The permission thus given for a fixed term may not be so unreasonably regulated, in the exercise by the commissioner of the powers delegated to him, as to destroy this permit altogether.

This Court has recognized the principle that a license to sell liquor will be protected against unreasonable regulations, promulgated during the term for which the license had been issued, affecting the exercise of the privilege conferred. For example, in the early case of *Maxwell* v. *Corporation of Jonesboro,* 58 Tenn. 257, an ordinance regulating the hours of closing of retailers of liquor was challenged as unreasonable. While that regulation was sustained, the Court held reasonableness to be a proper test. Said the Court: "Complainant was a retailer, licensed by the corporate and State authorities *before the passage of the ordinance* . . ." His license authorized him "to retail for twelve months, which term had not expired when the regulating ordinance was passed." An injunction was sought to restrain enforcement of the regulation as unreasonable and oppressive. The Court said the only question was as to the power of the corporation "after having granted a license" to pass the regulation.

The opinion referred to the older case of *Smith and Lackey* v. *Mayor, etc., of Knoxville,* 40 Tenn. 245, in which a similar question had been considered and in which the regulatory ordinance had been upheld as within the powers of the corporation, the Court in that case saying that, *"unless they* [the restrictive regulations] *are unreasonable or oppressive,* they are valid and will be maintained." NICHOLSON, C. J., then commented:

"The license is granted to a retailer both by the State and by the municipal authorities in the exercise of the taxing power. It is intended to furnish him with evidence that he has bought and paid for the privilege of retailing for a specified time within the corporate limits. He takes this privilege, however, subject to such reasonable exercise of the police powers as the corporate authorities may deem necessary to preserve order and quiet, and to prevent nuisances. The only question in the case is, whether the ordinance requiring retailers to close their houses at dark was unreasonable or oppressive?" (Page 259 of 58 Tenn.)

Other of our municipal ordinance cases hold that if unreasonable and oppressive such regulations will be stricken down. *Grills.* v. *Jonesboro,* 67 Tenn. 247; *Newbern* v. *McCann,* 105 Tenn. 159, 58 S. W. 114, 50 L. R. A. 476. All recognize the principle, applicable alike to the exercise of powers of regulation delegated to a State law enforcement agency, such as the Commissioner in the instant case, that the exercise of such delegated powers are subject to the implied limitation of reasonableness —however absolute the police power of the State acting through the legislature may be. Subject to this limitation, as we have said before, the exercise of the delegated discretion by the commissioner "will not be lightly interfered with by the Courts."

Looking to the regulation under review, the wisdom of its general objective is, we think, apparent. In an effort to minimize the evils inherent in the traffic, it is the policy of this and other states to prevent the consumption of liquors upon or about the premises where sales are made. Selling and drinking on the same premises, as was the old saloon practice, is strictly prohibited. This regulation is conceived to be in the public interest. The regulation before us is an extension of this policy to the immediate surroundings. We are, however, constrained to the conclusion that the application of the regulation should be subject to some exceptions, illustrated by the facts of the instant case, in order that it be not subject to the charge of unreasonableness. An element of retroactive and oppressive effect appears in the instant case. Appellant holds a license for the current year and the permit thus given him for that fixed period should not be, in effect, withdrawn, cancelled or suspended without fault or failure of his. A regulation so enforced appears to us to be unreasonable.

Counsel for the commissioner challenge the jurisdiction of the chancery court to entertain this bill and particularly to grant injunctive relief thereunder, since no property rights are involved. This provision in Section 4, subsection 3(a) of Chapter 49, Acts of 1939, is invoked: ''No person shall be deemed to have a property right in any license issued hereunder, nor shall said license itself, or the enjoyment thereof, be considered a property right.''

Although the appellant has no ''property right'' in his license, such civil right as he does have under the permit issued to him by the express authority of the statute may be protected against invasion by operation of a regulation unreasonable and oppressive in its application

to him. In the opening paragraph of his chapter entitled "In What Cases Injunction Will be Granted" Mr. Gibson thus broadly·states the rule:

"The various cases in which the Chancery Court will interfere by injunction are almost as numerous as the matters which fall within its equitable jurisdiction; but it may be laid down as a fundamental rule, applicable to all cases, that, wherever a legal or equitable right exists, whether arising from contract, from the legal or equitable ownership of property, *or otherwise,* [italics ours] the violation of that right will be enjoined on proper application to the Chancery Court, unless the legal remedy of compensatory damages would be. full, adequate and complete." Gibson's Suits in Chancery (3d Ed.), sec. 80.

█ And, more specifically, in Section 815, he says, "whenever commissioners . . . . or other authority, undertake to do some act not authorized by the Constitution or laws of the State, or by the particular authority under which they act, they will be enjoined by the Chancery Court on the application or any person liable to be irreparably injured by their illegal or unauthorized act."

█ No strict property right, in the accepted definition of that term, need be involved. Assuming that he is without fault, the holder of a permit issued by the express authority of the legislative act is the holder of a lawfully conferred privilege in the exercise of which, in good conscience and equity (signifying, as said by Bouvier [1 Bouv. Law Dict., Rawle's 3d Rev., p. 1057], in its broad sense natural justice), is entitled to protection for the period of his permit. This is consistent with the manifest intention of the legislature. The restraining arm of equity may reach thus far. It is to be observed that it is not sought in this case to enjoin a criminal prosecution,

which may not be done, but to protect a civil right against irreparable injury. *Kelly & Co.* v. *Conner,* 122 Tenn. 339, 123 S. W. 622, 25 L. R. A. (N. S.) 201.

The injunction prayed for will be granted to be operative for the period covered by the appellant's license.